## (July 19, 1966)

■ In the Matter of ALEXANDER SOS, Petitioner, v. BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.— STALEY, JR., J.: In this article 78 proceeding the petitioner seeks review of a determination of the Board of Regents which suspended petitioner's license to practice medicine in the State of New York for a period of six months. The sole question presented on the appeal is whether or not the evidence submitted before the Medical Committee on Grievances was sufficient to sustain the finding of a violation by the petitioner of section 6514 (subd. 2, par. [e]) of the Education Law of the State of New York which provides that the license of a physician may be revoked if he did undertake or engage in any manner, or by any ways or means whatsoever, to perform any criminal abortion, or to procure the performance of the same by another or would give information as to where or by whom such a criminal abortion might be performed or procured. Petitioner was charged with having been consulted by a pregnant young woman, the complainant herein, and having advised her that an abortion could be performed by a certain doctor, and that, in accordance with said recommendation, she did consult with the doctor recommended, who performed a criminal abortion upon her on or about March 1, 1963, and that she paid him the sum of $800. The only witness presented at the hearing of the charges against petitioner was the complainant, who testified that her boy friend took her to petitioner's office and that she told petitioner she was pregnant and wanted an abortion. Petitioner replied that he would not perform an abortion. She further testified that the petitioner and her companion held a conversation in Hungarian which she did not understand. After 10 minutes she and her companion left the petitioner's office and, after

leaving, her companion told her that petitioner had recommended a certain doctor, whom she consulted about a week later, and who attempted to perform an abortion operation. The petitioner testified that he was consulted by the complainant and that he did examine her and that since he was going away on a vacation, he told her she needed medical care. He suggested she enter the hospital where she worked as a nurse, which she refused to do, and he then suggested that she consult with a certain doctor but she was worried because he was connected with her hospital. The petitioner then testified that her companion asked him whether he knew a certain other doctor and whether it would be all right to go to him and petitioner agreed. On March 4, 1963, about four days after the attempted abortion, the complainant entered the hospital and, on March 5, 1963, she aborted a stillborn fetus. Neither the complainant's companion nor the doctor who allegedly operated upon her was called as a witness in support of the charges against petitioner and the omission was not explained. The respondent contends that the conversation between the petitioner and complainant's companion in Hungarian followed immediately by translation may reasonably be considered as part of the thing done, i.e., *res gestae*. This measured, considered conversation occurring an appreciable time after the conversation in Hungarian had been held was neither spontaneous nor otherwise within the *res gestae* rule. The respondent also contends that petitioner's version of his professional relationship with the complainant was unworthy of belief because of obvious discrepancies between his story and the documentary evidence. Such a contention does not meet the requirement for the affirmative evidence necessary to establish petitioner's guilt (*Matter of Stammer* v. *Board of Regents*, 287 N. Y. 359). Upon the entire record, there is no substantial evidence of the acts charged to sustain the board's determination. Determination annulled and petition granted, with costs. Gibson, P. J., Herlihy, Taylor and Aulisi, JJ., concur.